## No. 13,160.

GARDNER BROTHERS AND GLENN CONSTRUCTION COMPANY *v.*
AMERICAN SURETY COMPANY OF NEW YORK.
(37 P. [2d] 384)

Decided September 10, 1934.   Rehearing denied October 29, 1934.

Mr. HENRY H. CLARK, Mr. FREDERICK SASS, Mr. W. FELDER COOK (on petition for rehearing), for plaintiff in error.

Mr. EDGAR McCOMB, Mr. MILTON D. GREEN, Mr. WALTER E. SCHWED, for defendants in error.

*In Department.*

MR. JUSTICE HILLIARD delivered the opinion of the court.

ACTION on surety bond. A general demurrer to the complaint was sustained. An amendment to the complaint was stricken. A further amendment was filed, to which, and to the amendment previously stricken, a motion to strike and a motion to dismiss were interposed. The court treated these latter motions as a general demurrer and sustained them. Plaintiff elected to stand on its complaint and amendments, and suffered judgment of dismissal. Error is assigned.

It appears from the complaint that September 25, 1929, plaintiff entered into contract with the state, whereby it agreed, at its "own cost and expense," to construct a certain highway; that April 21, 1930, in furtherance of its work, plaintiff contracted with one Biskup for a supply of gravel, which Biskup agreed to excavate, crush and place in bin for plaintiff's use; that April 28, 1930, in assurance of Biskup's fulfillment, defendant executed the bond which is the basis of the action; that by its bond defendant promised to indemnify plaintiff "against loss or damage directly arising by reason of the failure of the principal to faithfully excavate, crush and place such materials in a bin, in accordance with said contract"; that August 19, 1930, plaintiff notified defendant that Biskup was not providing gravel in quantity agreed and required, and advised that unless Biskup "promptly resumed and diligently carried forward" his undertaking in accordance with his contract, plaintiff would be unable to complete its contract with the state in the time limited, "and for the loss occasioned thereby" defendant would be held responsible; that thereupon defendant assured plaintiff that Biskup should thereafter faithfully and diligently prosecute the work specified in his contract"; that "Biskup resumed the excavating, crushing and placing in the bin of gravel for surfacing said highway project, as required to be done by said contract, and carried the same on until the completion of said project by plaintiff under the principal contract"; that upon completion of the prin-

cipal contract it developed that in carrying out his contract Biskup had incurred, and not paid, obligations above the percentage reserved by plaintiff on account of the Biskup contract, which, in consonance with the principal contract, the state paid and charged to plaintiff; that in due form, and timely, plaintiff advised defendant of the Biskup defaults, and demanded payment.

By amendments plaintiff pleaded that the things set forth in the complaint were known to defendant as they severally transpired, and in its transactions with Biskup and plaintiff, defendant interpreted and construed Biskup's contract with plaintiff "as though it contained an express obligation on the part of said Biskup to pay for all labor, supplies and materials employed or used by him in carrying out" his contract; that pursuant to plaintiff's notice of Biskup's first default, defendant investigated the matter, made inquiry of "Biskup's financial condition, checked over his then unpaid accounts * * * and insisted that he, Biskup, should pay the same and that all future obligations of the same character that might arise under his said contract should be promptly paid by him, not only by reason of his liability therefor under said contract, but also by reason of his being the principal obligor on the bond above referred to, and so advised plaintiff"; that Biskup at all times recognized it as "his duty and obligation to pay for all such labor, supplies and materials used or furnished in carrying out the work specified in said contract, the same to all intents and purposes as if the same had been expressly set forth therein," and, with the "consent and approval" of defendant, "paid out money therefor"; that at Biskup's request, and with the knowledge and consent of defendant, plaintiff made direct payment to certain laborers and materialmen; that at Biskup's and defendant's request, plaintiff deposited certain funds in a bank for the purpose of paying same out to the laborers employed by Biskup or to others furnishing supplies or materials, and the same was paid out with the knowl-

edge, consent and approval of defendant; that defendant at no time advised it would assert that under the terms of his contract Biskup was not required to make said payments; that after defendant was advised of Biskup's unpaid claims, it failed to advise the state or plaintiff that it would not be responsible therefor, by reason whereof the state paid certain claims found to be correct out of plaintiff's funds; that on certain other claims action was brought against plaintiff and Biskup, of which action defendant had knowledge, but made no appearance, by intervention or otherwise, and permitted judgment to be entered against plaintiff and Biskup, which was paid by the state out of plaintiff's funds, by reason whereof defendant was concluded and bound quite as if it had been made defendant in the said action and judgment had gone against it; that plaintiff relied on the conduct of defendant as being intended to evidence its "intention in good faith to recognize * * * liability for the payment of whatever sums of money might finally be ascertained to be due" from Biskup as incurred in performance of his contract, and to repay plaintiff whatever it was required to pay on account of Biskup's default; that by defendant's conduct plaintiff was lulled into a sense of security, and that had defendant intimated it would not be responsible for the bills incurred by Biskup under his contract, plaintiff "could and would have immediately cancelled and terminated the contract and itself have taken over the performance of the work * * * and saved itself from further loss"; "that by reason of defendant's aforesaid conduct plaintiff permitted said Biskup to proceed with the work * * * notwithstanding his several defaults and breaches."

In a contract with the state, within a limited time and at its own cost and expense, as we have seen, plaintiff agreed to "furnish all materials and do all work * * * necessary or incidental to the complete construction" of a highway. It arranged with Biskup for gravel, Biskup's promise being to "excavate, crush and place in

460

the bin the gravel for surfacing said highway in accordance with the specifications of the state." Defendant's undertaking was that Biskup would "excavate, crush and place such materials in a bin," according to his contract. Other than his temporary lapse, called to defendant's attention August 19, 1930, concerning which damage is not alleged, failure of Biskup to supply kind and quantity of gravel as agreed is not claimed. But it is alleged that in considerable sum Biskup did not pay bills incurred in the matter, the obligations being of such nature that under plaintiff's contract to construct at its own expense, their discharge by plaintiff was required by the state. The construction contract provided for performance at the contractor's expense, but the Biskup contract contained no such provision. Defendant's relation to the Biskup contract was that he should observe its provisions. Biskup's contract was performed. Does it follow that defendant assured plaintiff Biskup would pay the cost of performance? Plaintiff argues that it does. We doubt the soundness of that contention. "The contract and bond measured the surety's liability and where the meaning of a contract with a compensated surety is clear and unambiguous, it should be enforced like other contracts, according to the plain meaning and intention of the words employed." *United States Co. v. Citizens Co.*, 62 Colo. 440, 444, 163 Pac. 281, 283. "An indemnity, or security, contract, like written instruments generally, is to have a reasonable interpretation, or construction, * * *. It is not to be extended by construction to bring within its scope things other than those therein expressed, merely because the judicial mind may think that they, equally with those included, ought to have been provided for." *People v. Beach,* 49 Colo. 516, 518, 113 Pac. 513, 514. "Though defendant is a surety for hire, it is entitled to have its contracts construed according to the plain meaning of their terms." *Empson v. Aetna Casualty and Surety Co.,* 71 Colo. 282, 285, 206

Pac. 378, 379. See, also, *People v. Southern Surety Co.,* 76 Colo. 141, 144, 230 Pac. 397, 398.

In *State Board of Agriculture v. Dimick,* 46 Colo. 609, 105 Pac. 1114, there is exposition of the law on facts not dissimilar to the situation claiming our attention. Dimick contracted to erect a college building, but the contract did not provide that he should pay for the labor and material employed and used in the construction. He furnished a bond of assurance that he would "well and truly fulfil the requirements" of his contract, and "pay all bills in connection with the erection of said building." Dimick completed the building according to the plans and specifications, but did not pay all bills he incurred in its erection. His bondsmen were sued. The trial court sustained their general demurrer to the complaint. On review the ruling was approved, Mr. Justice Campbell, for the court, saying: "There being no allegation in the complaint that the contract required the contractor to pay for labor done upon or material that entered into the construction of the building, a bond to secure the performance of the contract could not be construed to extend to labor and material men, but is limited to the performance of the contract. The condition of the bond that such bills are to be paid, otherwise the bond should be in force, must, in the absence of an agreement by the contractor to pay them, be considered a promise without consideration." Emphasis of the same view is found in *Covey v. Schiesswohl,* 50 Colo. 68, 114 Pac. 292, where recovery was adjudged against the surety on a bond assuring performance of a contract containing provisions "equivalent to an express contract on the part of the contractor to pay for all labor and material that goes into the building." The law, as we deduce, is, that where the contract assured specifically provides the contractor shall pay for the labor and material, or contains language equivalent thereto, as in the Covey review, and the terms of the bond go to the performance of the contract, the surety is bound; otherwise, not. And, according to

the Dimick inquiry, even though the bond provides for payment, if the contract itself contains no such provision the surety is not beholden. Considering that neither in the Biskup contract nor in the surety writing was there agreement to pay the bills which embarrass plaintiff, how, consistent with the rules by which contracts are construed, may it be said the surety shall pay Biskup's defaults to his creditors? That Biskup was himself liable for the obligations is without significance, for the predicate is in his contracts with such creditors, not in his contract with plaintiff. Likewise, no importance is to be attached to the fact that plaintiff was obliged to discharge the bills, for that grew out of its contract with the state. We cannot think the statement in the Biskup contract that the gravel he was to supply should be in accordance with the specifications made part of plaintiff's contract with the state, operates to make the whole of such principal contract, or any other provision thereof, part of his. *Guerini Stone Co. v. Carlin Const. Co.,* 240 U. S. 264, 36 Sup. Ct. 300, 60 L. Ed. 636. Biskup complied with the provision of the primary contract referred to in his contract. Therefore, as we think, default did not obtain in defendant's assurance, and the court rightly resolved the point when it sustained the demurrer to the complaint.

We do not regard the amendments to the complaint as helpful to plaintiff's cause. They were filed on the theory of defendant's estoppel. The elements of that doctrine do not appear. See discussion by Mr. Justice Beck in *Griffith v. Wright,* 6 Colo. 248. Defendant was bound to respond to plaintiff's claim, if at all, by virtue of the surety contract it signed. We have held with the trial court that the language of that instrument did not cover the defaults alleged as the basis of plaintiff's demand. We doubt if the situation admitted of a better complaint than counsel's original effort. All that Biskup promised plaintiff, and all that defendant assured for him, was that he would supply gravel according to

certain specifications. When it appeared Biskup was not meeting quantity requirements, plaintiff notified defendant that unless Biskup's "work of excavating, crushing and placing in bin of gravel, as provided in said contract of said Biskup, * * * in sufficient quantities to meet the requirements and specifications * * * is promptly resumed and diligently carried forward," plaintiff will be delayed in its contract with the state, "and for the loss occasioned thereby" plaintiff would hold the surety responsible. The complaint shows that defendant did not question its responsibility for Biskup's stated default. It stood not on point or time. First assuring plaintiff Biskup would supply gravel as he had agreed, it immediately required such action on his part. The steps it took in effecting the desired result, and the manner thereof, giving full meaning to all that is set forth in the amendments to the complaint, were consistent with its contracted obligation to see that Biskup supplied plaintiff with gravel as he had agreed. Simply because defendant met its responsibility, and beyond that, as we study the amendments, essayed nothing, we are not disposed to the view that its obligation in general took on new form, or that its burden became more onerous. Briefly, on the amendments, as on the original complaint, we must rest our understanding on the contract. Since, as already determined, that instrument does not require defendant to respond to plaintiff's action, the second ruling of the court sustaining the demurrer to the complaint, the amendments deemed part thereof, has our approval.

Let the order be that the judgment is affirmed.

Mr. Chief Justice Adams and Mr. Justice Campbell concur.